[Cite as *In re I.A.-W.*, 2022-Ohio-1766.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE I.A.-W.                                   :
                                                :          No. 111217
A Minor Child                                   :
                                                :
[Appeal by L.A., Mother]                        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 26, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD20910503

---

### *Appearances:*

Patrick S. Lavelle, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant L.A. ("Mother") appeals the decision of the Cuyahoga County Juvenile Court terminating her parental rights and awarding custody of her minor daughter, I.A.-W., to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "agency"). After a thorough review of the law and applicable facts, we affirm the judgment of the juvenile court.

## I. Factual and Procedural History

{¶ 2} CCDCFS first became involved in this matter at the time of the child's birth, when Mother tested positive for methamphetamine. Both parents had issues with substance abuse, domestic violence, mental health, and lack of housing and basic needs. In December 2020, CCDCFS filed a complaint alleging that I.A.-W. was dependent and requested a disposition of permanent custody to CCDCFS. Along with the complaint, the agency also filed a motion for predispositional temporary custody of the child. The court held a hearing on the motion, at which Mother[1] appeared and stipulated to the allegations of the complaint, as amended. The admissions acknowledged Mother's ongoing issues with substance abuse, mental health, and domestic violence. The court subsequently entered an order adjudging I.A.-W. to be dependent and granted temporary custody to CCDCFS.

{¶ 3} A case plan was developed and approved by the court to assist Mother in addressing her issues and work toward reunification. In July 2021, CCDCFS moved to modify temporary custody to permanent custody. Trial was held on the motion in November 2021, where the agency presented testimony from CCDCFS worker Melanie Green and family advocate Charles Collins. Mother did not present any witnesses or testify on her own behalf.

{¶ 4} Ms. Green testified as to Mother's case plan and the status of Mother's completion thereof. Mother had been referred for a drug and alcohol assessment

---

[1] I.A.-W.'s father did not participate in the proceedings below and is not a party to this appeal.

and ordered to follow recommendations. Because Mother had a history of depression, bipolar disorder, and schizophrenia, her case plan included services for mental health treatment. Mother was referred for a mental health assessment but failed to comply with referred services.

{¶ 5} Mother also had a history of domestic violence, including one incident that resulted in her hospitalization. She was referred to Moore Counseling and recommended for anger management services but did not engage in those services.

{¶ 6} Finally, Mother's case plan also included housing services. She was referred to Cuyahoga Job & Family Services as well as CMHA Housing and had been offered sober housing through the Matt Talbot substance abuse program, but she declined that offer.

{¶ 7} Ms. Green testified that the child has been with the same foster parents since her removal in December 2020 and is very bonded with them. The home is appropriate, and the child's basic needs are being met. CCDCFS had attempted to identify potential relatives who could qualify as appropriate caregivers but was unsuccessful.

{¶ 8} Mother attended supervised visits with I.A.-W. until September 2021. Ms. Green testified that there were no problems during the visits. Mr. Collins testified that he had observed a bond with the child during his observation of one visit.

{¶ 9} Following the witness testimony, the child's guardian ad litem, Melanie GiaMaria, gave her oral report, in which she stated that neither parent had made

any substantial compliance with the case plan and that she did not believe that either parent would have the ability to have what they need in order to raise I.A.-W. within the next year. She recommended that the court grant permanent custody of the child to CCDCFS, stating that it was in the best interest of the child.

{¶ 10} Following the hearing, the court granted the motion for permanent custody to CCDCFS and terminated Mother and Father's parental rights. The trial court made the following findings:

> (10) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parent.

> (11) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

> (12) As part of the case plan services for the mother, CCDCFS made referrals for substance abuse treatment, mental health treatment, domestic violence classes, anger management classes, and stable housing.

> (13) Due to mother's failure to maintain sobriety, Mother was court-ordered in May 2021 to complete in-patient substance abuse treatment and intensive outpatient treatment following her completion. Mother completed in-patient treatment, but failed to complete her follow-up

outpatient care. On November 19, 2021, mother was transferred to a court-ordered sober living center.

(14) Mother has failed to maintain mental health treatment and failed to complete domestic violence and anger management classes. Mother continues to not have safe and stable housing.

* * *

(18) It is in the child's best interest to be placed into CCDCFS's permanent custody.

(19) Mother and father's visits with the child are inconsistent and they have been absent for visits for the last six weeks.

(20) Foster parents of the child are providing all the child's basic needs. The child appears well-bonded to the foster family.

(21) The child is not able to express her wishes directly. Guardian Ad Litem for the child Melanie GiaMaria recommended that the child be placed in the agency's permanent custody.

(22) The child has been in the agency's custody since December 15, 2020 and has not returned to the custody of either of her parents.

(23) The child needs a legally secure placement and this cannot be achieved without a grant of permanent custody. CCDCFS has investigated but has been unable to find alternative placements.

(24) CCDCFS has made reasonable efforts to finalize the permanency plan for the child. Those efforts include substance abuse services, mental health services, domestic violence classes, and anger management classes. The permanency plan for the child is reunification. The concurrent permanency plan is permanent custody and adoption. The permanency plan is approved for the child.

{¶ 11} The court further found that Mother had demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with her and showed an unwillingness to provide an adequate permanent home for her.

{¶ 12} The court ultimately held that there was clear and convincing evidence to grant the agency's motion for permanent custody and that permanent custody was in the best interest of the child. The court determined by clear and convincing evidence that the child could not be placed with either of her parents within a reasonable time or should not be placed with either parent.

{¶ 13} Mother then filed the instant appeal, raising two assignments of error for our review:

> 1. The trial court's award of permanent custody to DCFS, despite DCFS's failure to make reasonable efforts to eliminate the continued removal of the child from her home and to return the child to her home, violated state law and appellant's right to due process of the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution.

> 2. The trial court's decision to award permanent custody to DCFS was against the manifest weight of the evidence.

## II. Law and Analysis

### A. Reasonable Efforts

{¶ 14} In Mother's first assignment of error, she argues that her due process rights were violated when the juvenile court did not require the agency to make reasonable efforts to eliminate the continued removal of the child and to return her home. Mother contends that CCDCFS failed to develop a viable case plan to assist with the goal of reunification or to provide Mother with any of the services she needed.

{¶ 15} R.C. 2151.419 pertains to a trial court's determination as to whether an agency made reasonable efforts to prevent removal or to return a child to the child's

home. Appellant's reliance on R.C. 2151.419 is misplaced, however, because CCDCFS's motion for permanent custody was filed pursuant to R.C. 2151.413.

{¶ 16} In *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, the Supreme Court of Ohio analyzed whether a reasonable-efforts determination is required in motions for permanent custody filed pursuant to R.C. 2151.413. *Id.* at ¶ 2. The court concluded that R.C. 2151.419 does not apply to motions for permanent custody filed pursuant to R.C. 2151.413, nor hearings held pursuant to R.C. 2151.414 on motions for permanent custody. *Id.* at ¶ 41.

> R.C. 2151.419, which requires a trial court to determine whether a children services agency made reasonable efforts to prevent removal or to return a child to the child's home, applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children."

*In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 13, quoting *In re C.F.* at ¶ 41.

{¶ 17} In *In re Baby Boy M.*, 8th Dist. Cuyahoga No. 91312, 2008-Ohio-5271, this court applied the Supreme Court of Ohio's holding in *In re C.F.* This court held that the trial court did not need to make a reasonable-efforts determination because it was ruling on a motion for permanent custody. *Id.* at ¶ 41. *Accord In re A.P.* at ¶ 13; *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 19 (8th Dist.).

{¶ 18} Because the state moved for permanent custody under R.C. 2151.413, the trial court was not required to make the R.C. 2151.419 determination that CCDCFS made reasonable efforts to reunify the family. Nevertheless, the record reflects that the trial court did, in fact, make reasonable-efforts findings in its

opinion. Specifically, the juvenile court stated: "CCDCFS has made reasonable efforts to finalize the permanency plan for the child. Those efforts include substance abuse services, mental health services, domestic violence classes, and anger management classes." We find that the record supports this finding.

{¶ 19} In this case, the record shows that CCDCFS made reasonable efforts to reunite Mother with the child by establishing a workable case plan that included services to address concerns with Mother's mental health and substance abuse concerns and issues with domestic violence. Contrary to Mother's position on appeal, the record supports the juvenile court's determination that CCDCFS worked diligently to facilitate reunification by referring Mother to local agencies that could address her issues. Although Mother engaged with some of the services in the case plan, she failed to complete the programs recommended by the agency that would enable her to reunite with I.A.-W.

{¶ 20} There was also testimony that the agency investigated several individuals for placement of the child. However, these individuals were determined to be unsuitable.

{¶ 21} Thus, although the trial court was not required to make a "reasonable efforts" finding in its permanent custody order, we find the record demonstrates that the agency did, in fact, make reasonable efforts to return I.A.-W. to Mother's home. Mother's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 22} In her second assignment of error, Mother argues that the trial court's decision to grant permanent custody of I.A.-W. to the agency was against the manifest weight of the evidence.

{¶ 23} The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997); *see also In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (a parent has a "'fundamental liberty interest' in the care, custody, and management" of his or her child). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, at ¶ 29, quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 24} Because the termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14, it is "an alternative of last resort." *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). "'All children have the right, if possible, to parenting

from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life for the dependent children" and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 25} A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence when the record contains competent, credible evidence by which it could have found that the essential statutory elements for an award of permanent custody have been established. *In re B.P.,* 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919. Before a juvenile court can terminate parental rights and grant permanent custody of a child to CCDCFS, it must satisfy the two-prong test set forth in R.C. 2151.414. First, the juvenile court must find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) exists:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 26} In the instant matter, the juvenile court determined that the child could not be placed with a parent within a reasonable period of time or should not be placed with either parent, pursuant to R.C. 2151.414(B)(1)(a). In making this determination, the court found that Mother continuously and repeatedly failed to remedy the conditions causing the child's initial removal. The court further found that Mother showed a lack of commitment toward the child by failing to regularly support, visit, or communicate with her or by showing an unwillingness to provide an adequate home for her.

{¶ 27} Mother disputes this finding, arguing that she participated in and completed a substantial portion of the case plan but required additional time to complete the remainder. She maintains that she had a good relationship with the

child and needed more time to obtain housing and employment to be able to provide for the child's basic needs.

{¶ 28} Testimony at the hearing reflected that Mother had completed only the first of several steps in her substance abuse treatment program and had failed to engage in services relating to her mental health or domestic violence issues. In addition, Mother twice violated her probation by failing to maintain sobriety or meeting with her probation officer, leading to her incarceration twice during the pendency of the case. Moreover, Mother's visits with the child were inconsistent and had stopped six weeks prior to trial.

{¶ 29} Further, with regard to Mother's assertion that additional time was needed, during the hearing Ms. Green noted that the child had been in agency custody for nearly a year and Mother had not completed her case plan objectives. Consequently, the agency could not recommend an extension.

{¶ 30} We find that the record contains competent, credible evidence that the child could not or should not be placed with Mother within a reasonable time.

{¶ 31} Once the first prong is met, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). "Clear and convincing evidence" is that measure or degree of proof that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, at ¶ 8. A juvenile court's

decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence "if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence." *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, at ¶ 16.

{¶ 32} We review a juvenile court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 33} In determining the best interest of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 34} A juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, but "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. This court has previously stated that only one of these enumerated factors needs to be resolved in favor of the award of permanent custody. *In re Moore*, 8th Dist. Cuyahoga No. 76942, 2000 Ohio App. LEXIS 3958 (Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683, 621 N.E.2d 426 (3d Dist.1993). Further, the Supreme Court of Ohio has clarified that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31.

{¶ 35} Here, the juvenile court stated that it considered the relevant factors set forth under R.C. 2151.414(D)(1) when assessing I.A.-W.'s best interests. Upon careful review of the record, we do not find that the juvenile court abused its discretion in determining that permanent custody was in I.A.-W.'s best interest.

{¶ 36} R.C. 2151.414(D)(1)(a) relates to the interaction and interrelationship of the child with various significant individuals in the child's life, including parents, siblings, relatives, and foster caregivers. The record demonstrates that I.A.-W. had

been placed with a foster family, who is willing to adopt her. There was testimony that her basic needs were being met and that she was "very bonded" with the foster family.

{¶ 37} Under R.C. 2151.414(D)(1)(b), the juvenile court was to consider the child's wishes as expressed directly or through her GAL. At the time of trial, I.A.-W. was too young to express her wishes with regard to permanent custody. "The juvenile court properly considers the GAL's recommendation on the permanent-custody motion as part of the R.C. 2151.414(D)(1)(b) analysis where the children are too young to express their wishes." *In re B/K Children*, 1st Dist. Hamilton No. C-190681, 2020-Ohio-1095, ¶ 45. In the instant matter, the GAL recommended permanent custody to CCDCFS, based upon Mother's failure to substantially comply with the case plan. The GAL further stated that she did not believe that Mother would have the ability to have in place what she would need to raise the child within the next year.

{¶ 38} R.C. 2151.414(D)(1)(c) relates to the child's custodial history. At the time of trial, I.A.-W. had been in the custody of the agency for over nearly one year, beginning shortly after she was born.

{¶ 39} R.C. 2151.414(D)(1)(d) relates to the child's need for a legally secure placement and whether that can be achieved without a grant of permanent custody. The trial court in this case found that I.A.-W. cannot be placed with one of her parents within a reasonable time or should not be placed with either parent. Specifically, the trial court made findings under R.C. 2151.414(E) including Mother's

"failure to remedy" and "lack of commitment." "'Once a court determines, by clear and convincing evidence, that one of the enumerated factors exists, the court must enter a finding that the child cannot or should not be placed with either of [her] parents within a reasonable time.'" *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 43, quoting *In re Glenn*, 139 Ohio App.3d 105, 113, 742 N.E.2d 1210 (8th Dist.2000).

{¶ 40} Under R.C. 2151.414(D)(1)(e), the juvenile court was to consider whether any of the factors in divisions (E)(7) to (11) of R.C. 2151.414 applied in relation to Mother and the child. None of these factors appear to have been applicable to this matter, and Mother does not argue otherwise.

{¶ 41} The above-mentioned findings were all supported by the testimony presented at trial. Moreover, the court was guided by the recommendation of the GAL, who spoke on behalf of I.A.-W. and recommended that it was in I.A.-W.'s best interest to grant the agency permanent custody.

{¶ 42} Thus, we find that the juvenile court's decision was not against the manifest weight of the evidence. Mother's second assignment of error is overruled.

### III. Conclusion

{¶ 43} After thoroughly reviewing the entire record, we affirm the juvenile court's judgment granting permanent custody of I.A.-W. to CCDCFS. While not required to do so, the court properly determined that CCDCFS made reasonable efforts to reunify the family. Further, the juvenile court's judgment was not against

the manifest weight of the evidence.  Both of Mother's assignments of error are overruled.

**{¶ 44}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

FRANK DANIEL CELEBREZZE, III, JUDGE

SEAN C. GALLAGHER, A.J., CONCURS;
EMANUELLA D. GROVES, J., CONCURS IN JUDGMENT ONLY