[Cite as *In re I.N.*, 2024-Ohio-950.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE I.N. | : | |
| | : | No. 113258 |
| A Minor Child | : | |
| | : | |
| [Appeal by M.P., Mother] | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-23901254

### *Appearances:*

Wegman Hessler Valore and Michael J. Gordillo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Zachary L. Lafleur, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

EILEEN T. GALLAGHER, J.:

{¶ 1} Mother-appellant, M.P. ("Mother"), appeals from the juvenile court's judgment granting permanent custody of her minor child, I.N., to appellee, Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). Mother raises the following assignments of error for review:

1. The trial court's finding that appellant and I.N. could not be reunified within a reasonable period of time was against the manifest weight of the evidence.

2. The trial court's finding that terminating appellant's parental rights and awarding CCDCFS permanent custody of I.N. was in the best interests of I.N. was against the manifest weight of the evidence.

{¶ 2} After careful review of the record and relevant case law, we affirm the juvenile court's judgment.

## I. Procedural and Factual History

{¶ 3} Mother is the biological parent of the minor child, I.N. (d.o.b. 01/28/2023). The child's biological father is unknown. Just days after I.N.'s birth, CCDCFS filed a complaint for temporary custody, alleging that I.N. was a dependent child as defined in R.C. 2151.04(D). In support of the complaint, CCDCFS alleged the following set of particulars:

1. Mother does not have appropriate housing in which to provide care for the child. Her home does not have working utilities, operational smoke detectors, and Mother is currently facing eviction.

2. Mother has two older children who were removed from her custody due, in part, to her lack of appropriate housing and failure to provide for the basic needs of the children. One child is in a Planned Permanent Living Arrangement with CCDCFS, the other child was placed in the legal custody of a relative.

* * *

5. Alleged father, John Doe, has failed to establish paternity and has failed to support, visit, or communicate with the child since birth.

{¶ 4} Following a hearing held on January 31, 2023, the child was committed to the emergency temporary care and custody of CCDCFS. By entry dated May 3, 2023, the child was adjudicated dependent and placed in the temporary custody of

the agency. In the order, the juvenile court approved a case plan for reunification, which was developed by CCDCFS to address ongoing concerns with domestic violence, Mother's parenting practices, and her ability to maintain stable and appropriate housing.

{¶ 5} On May 24, 2023, CCDCFS filed a motion to modify the order of temporary custody to an order of permanent custody pursuant to R.C. 2151.413. The motion was supported by the affidavit of Alease Chisholm ("Chisholm"), an extended-services worker employed by CCDCFS, who averred, in pertinent part:

> 4. A case plan was filed with the Juvenile Court and approved which requires that [Mother] engage in parenting education, domestic violence education, maintain stable and appropriate housing, and provide for the child's special medical and basic need.
>
> 5. Mother has engaged in domestic violence education but has failed to demonstrate a benefit from services and continues to engage in a domestically violent relationship with the alleged father, [D.P.]
>
> 6. Mother has engaged in parenting education in the past but has failed to demonstrate a benefit from services and has failed to engage in another parenting education program.
>
> 7. Mother has not had stable and appropriate housing for several years and cannot provide for the child's basic needs.
>
> 8. Mother has failed to demonstrate appropriate decision making regarding her child's specialized medical needs.
>
> 9. Mother has another child who was removed from her care due to concerns of ongoing domestic violence between mother and that child's father, mother's lack of stable and appropriate housing, and mother's cognitive delays. That child was ultimately placed in the legal custody of relatives.
>
> 10. Mother has another child who was removed from her care due in part to concerns of ongoing domestic violence between mother and mother's paramour, mother's failure to ensure the safety of the child,

and mother's lack of stable and appropriate housing. That child was ultimately placed in a Planned Permanent Living Arrangement.

{¶ 6} On September 25, 2023, a hearing was held to address the agency's motion for permanent custody. On behalf of the agency, Chisholm testified that she was assigned to the child's case in January 2023. Chisholm outlined Mother's extensive history with the agency and explained the circumstances that caused I.N. to be removed from Mother's care. In pertinent part, Chisholm noted that the agency sought emergency temporary custody of I.N. at the time of his birth because the agency had previously removed two other children from Mother's care in 2019 and 2021 "due to the same or similar circumstances" involved in I.N.'s case. (Tr. 13, 27.)

{¶ 7} Chisholm testified that a case plan was developed to assist Mother in addressing the issues that led to the child's removal. The permanency plan was reunification. However, if infeasible, the concurrent plan was for permanent custody. Chisholm testified that the case plan required Mother to complete objectives relating to "parenting, domestic violence, housing, and mental health." (Tr. 9.)

{¶ 8} Despite the agency's efforts to assist Mother in addressing her issues, Mother failed to complete a parenting education course and did not engage in mental-health services. Chisholm explained that Mother was previously referred to a community collaborative for parenting education but did not participate in parenting services because "she didn't feel she needed it and if she wanted it, she

would reach out to [the service provider]." (Tr. 10.) Similarly, Mother was referred to a community collaborative for a mental-health evaluation but expressed that "if she felt she needed [mental-health services], she would reach out to [the collaborative]." (Tr. 12.)

{¶ 9} Regarding the domestic-violence component of the case plan, Chisholm confirmed that Mother completed domestic-violence services. Nevertheless, the agency had ongoing concerns with domestic violence in the home because Mother "still engages with the gentleman that was giving her all the – that was toxic to her." (Tr. 10.) Chisholm testified that Mother maintained a relationship with her abuser despite his incarceration for a crime in which she was a victim. Specifically, Chisholm testified that "[Mother] has reported to me that her previous paramour * * * was harassing her, calling her, wanting her to do things for him. Her mom also mentioned that they were kind of engaging with each other." (Tr. 21.)

{¶ 10} Stable and appropriate housing also remained a concern for the agency. Mother was referred to the Cleveland Metropolitan Housing Authority ("CMHA") for housing assistance but failed to obtain independent housing. Chisholm stated that Mother has a history of moving from "residence-to-residence" and was previously evicted from her home. (Tr. 12.) At the time of trial, Mother was living with a friend and two other adults in a two-bedroom home. Mother did not have a bedroom in the home and was required to sleep on the couch. Chisholm testified that she has been to the home where Mother is currently living and that it

is not appropriate to meet the needs of an infant child. Chisholm explained that the home does not have a crib or other supplies to provide for the child's basic needs.

{¶ 11} Regarding Mother's interactions with the child, Chisholm testified that Mother has frequently engaged in weekly visitation with the child. Chisholm stated that the agency's only concern with visitation is that Mother "struggles with trying to console [I.N.]" when the child becomes "fussy." (Tr. 16.)

{¶ 12} Chisholm also provided extensive testimony concerning I.N.'s current placement in a foster home. Chisholm stated that the foster home is appropriate and that I.N.'s basic needs are being met. Two other children reside in the foster home and I.N. has developed a strong bond with the family. Chisholm testified that I.N. is "always happy-go-lucky * * * the other children in the home love him and it's a good environment." (Tr. 15.) In addition, the foster family are meeting I.N.'s special medical needs, including a medical condition that impairs his breathing. Chisholm testified that the foster parents have received specialized training to manage I.N.'s medical needs and have sought medical assistance to resolve a birth-condition that altered the shape of his head.

{¶ 13} Finally, Chisholm testified that the agency investigated suitable relatives for placement during the pendency of the temporary-custody order. Its efforts proved unsuccessful. Chisholm explained that the agency "reached out to several relatives that were given by [Mother] and by the alleged father, but nobody wanted to take the baby in." (Tr. 14.)

{¶ 14} Based on the foregoing, Chisholm opined that permanent custody in favor of the agency was in the child's best interests "due to history with mom and the family, and the matters of the current history repeating itself." (Tr. 16.)

{¶ 15} On cross-examination, Chisholm confirmed that the agency's referrals were made while Mother was pregnant with I.N. and that no additional referrals were made after I.N.'s birth. Chisholm further agreed that Mother is no longer eligible for housing assistance from CMHA because she was evicted from her home in July 2023. Lastly, Chisholm conceded that CCDCFS sought permanent custody shortly after I.N. was placed in the agency's temporary custody. When asked why the agency made the decision to "not give [Mother] an opportunity to actually work her case plan," Chisholm responded:

> Well the only reason we did the temporary custody filing was because there was an alleged father, so we wanted to make sure if he was the father of the child that we could maybe work with him to get the child or relatives through his family.

(Tr. 25.)

{¶ 16} At the close of trial, the juvenile court heard from child's guardian ad litem, Elba G. Heddesheimer, Esq. (the "GAL"). Consistent with the recommendations of the agency's employees, the GAL recommended that permanent custody be granted in favor of CCDCFS. The GAL summarized her position, stating, in relevant part:

> I believe [Mother] is a good person. I believe she tries to do her best, but unfortunately (inaudible) the baby is unable to protect himself, unable to do things by himself and he's totally dependent on an adult

with the health issues, and unfortunately, the issues with housing and the parenting are the same.

And as the social worker testified, there is no [attempt to enroll] in classes. * * * She just has not even started it.

So I believe this is why the Agency did file for permanent custody[.] * * *And as I said, this is just a baby and I believe that permanent custody is the best for him.

(Tr. 35-36.)

{¶ 17} In a journal entry dated September 25, 2023, the juvenile court granted the agency's motion for permanent custody. The juvenile court found, by clear and convincing evidence, that the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents. The court further found, by clear and convincing evidence, that it is in the best interests of the child to be placed in the permanent custody of CCDCFS.

{¶ 18} Mother now appeals from the juvenile court's judgment.

## II. Law and Analysis

### A. Permanent Custody Standard

{¶ 19} In the first and second assignments of error, Mother collectively argues the juvenile court's award of permanent custody is against the manifest weight of the evidence.

{¶ 20} We take our responsibility in reviewing cases involving the termination of parental rights and the award of permanent custody very seriously. A parent has a "'fundamental liberty interest' in the care, custody and management"

of his or her child, *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and the right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 21} Because the termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" it is "an alternative [of] last resort." *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14; *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). All children have "'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing

*In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 22} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). This first prong of this statute authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e).

{¶ 23} In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then analyze whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the

evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.* at ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 24} Recently, the Supreme Court of Ohio clarified the standard of review in permanent custody cases, explaining that,

> [g]iven that R.C. 2151.414 requires that a juvenile court find by clear and convincing evidence that the statutory requirements are met, * * * the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*In re Z.C.*, Slip Opinion No. 2023-Ohio-4703, ¶ 11.

{¶ 25} With respect to Mother's challenges to the weight of the evidence supporting the juvenile court's judgment in this case, the Ohio Supreme Court stated, in relevant part:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.]. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v.*

*Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id*. at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id*. at ¶ 14.

### 1. First Prong — R.C. 2151.414(B)

{¶ 26} With respect to the first prong of the permanent-custody analysis, the juvenile court found, pursuant to R.C. 2151.414(B)(1)(a), that I.N. is not abandoned or orphaned, but cannot be placed with either parent within a reasonable time or should not be placed with the child's parents. Because the child's father is unknown, we limit our review to circumstances involving Mother.

{¶ 27} When assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re A.V.*, 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58; *In re R.M.*, 8th Dist. Cuyahoga Nos. 98065 and 98066, 2012-Ohio-4290, ¶ 14; *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13. A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent. *In re Ca.T.*, 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42.

{¶ 28} In this case, the juvenile court found the child could not be placed with either parent within a reasonable time or should not be placed with either parent pursuant to the factors outlined in R.C. 2151.414(E)(1), (4), (14), and (16). These provisions provide as follows:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
>
> * * *
>
> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
>
> * * *
>
> (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
>
> * * *
>
> (16) Any other factor the court considers relevant.

{¶ 29} With respect to the juvenile court's finding under R.C. 2151.414(E)(1), Mother does not dispute that she did not fully satisfy the objectives of her case plan and did not take reasonable steps to remedy the conditions that caused the child to

be removed from her care. Nevertheless, Mother argues the juvenile court's finding is against the manifest weight of the evidence because (1) the agency sought permanent custody without providing her a reasonable opportunity to address the agency's concerns, and (2) the agency did not make reasonable efforts to reunify the family prior to the termination of her parental rights. We find no merit to Mother's position.

{¶ 30} First, we reject the Mother's contention that the agency prematurely sought permanent custody. Although former R.C. 2151.413(A) previously required a children services agency to have temporary custody of a child for at least six months before filing a permanent custody motion, the current version of the statute does not contain a time limitation. *In re A.M.*, 4th Dist. Athens Nos. 17CA32 and 17CA36, 2018-Ohio-646, 105 N.E.3d 389, ¶ 113, citing *In re Brenna E.*, 124 Ohio App.3d 143, 145, 705 N.E.2d 728 (6th Dist.1997) (other citations omitted).

{¶ 31} Furthermore, the record does not support Mother's contention that she was not provided a reasonable period of time to work on her case plan or to participate in case-plan services. Beyond Mother's participation in scheduled visits with the child, she took no active steps between January 2023 and May 2023 to participate in the agency's recommended services. Mother's entire argument is premised on the assumption that the juvenile court's permanent custody determination was based solely on the progress she made up until May 24, 2023, when the permanent custody motion was filed. Mother neglects to consider, however, that approximately four additional months elapsed between the filing of

the permanent custody motion and the permanent custody hearing. During this period of time, Mother could have taken reasonable steps to substantially address the objectives of her case plan — but failed to do so. Mother continuously ignored the agency's recommendations or otherwise expressed her position that the recommended services were not necessary. *See In re A.L.A. & A.S.A.*, 11th Dist. Lake Nos. 2011-L-020 and 2011-L-021, 2011-Ohio-3124, ¶ 108 (A parent "is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal.").

{¶ 32} We are equally unpersuaded by Mother's assertion that the juvenile court's reasonable-efforts finding is against the manifest weight of the evidence. Ordinarily, "a juvenile court is not required to make a reasonable-efforts determination when it was ruling on a motion for permanent custody." *In re B.P.*, 8th Dist. Cuyahoga No. 112332, 2023-Ohio-1377, ¶ 19, citing *In re I.A.-W.*, 8th Dist. Cuyahoga No. 111217, 2022-Ohio-1766, ¶ 17; *see also* R.C. 2151.419. However, where, as here, the juvenile court relies on R.C. 2151.414(E)(1) to support an award of permanent custody to the agency, the court must examine the "reasonable case planning and diligent efforts by the agency to assist the parents" when considering whether the child cannot be placed with the parents within a reasonable time or should not be placed with the parents. *In re M.K.*, 5th Dist. Guernsey No. 22CA000030, 2023-Ohio-96, ¶ 49, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 42.

{¶ 33} Typically, the "diligent efforts" required of the agency under this section are set forth in a case plan adopted pursuant to R.C. 2151.412. The goals of any case plan are: (1) to achieve a safe out-of-home environment for the children during their removal, and (2) eliminate with all due speed the need for an out-of-home placement so that the children can return home. R.C. 2151.412(G)(1). *See also In re M.B.*, 8th Dist. Cuyahoga Nos. 101094, 101095, and 101096, 2014-Ohio-4837, ¶ 29. *Accord In re J.L.*, 8th Dist. Cuyahoga Nos. 85668, 85669, and 85670, 2005-Ohio-6125, ¶ 18 (considering whether CCDCFS case plan was adequate).

{¶ 34} Similarly, "reasonable efforts" mean "'[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed.'" *In re C.F.* at ¶ 28, quoting Will L. Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation*, 12 B.U.Pub.Int.L.J. 259, 260 (2003); *In re L.G.*, 8th Dist. Cuyahoga No. 110789, 2022-Ohio-529, ¶ 60. "'Reasonable efforts means that a children's services agency must act diligently and provide services appropriate to the family's need to prevent the child's removal or as a predicate to reunification.'" *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 95, quoting *In re D.A.*, 6th Dist. Lucas No. L-11-1197, 2012-Ohio-1104, ¶ 30. "In other words, the agency must use reasonable efforts to help remove the obstacles preventing family reunification." *In re L.G.* at ¶ 60, citing *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 76.

{¶ 35} What constitutes "reasonable efforts" varies with the circumstances. *In re C.B.C.* at ¶ 76. "The issue in a reasonable-efforts determination is not whether the agency could have done more, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case." *In re A.F.*, 8th Dist. Cuyahoga No. 110503, 2021-Ohio-4519, ¶ 35. ""Reasonable efforts" does not mean all available efforts.'" *In re J.B.*, 8th Dist. Cuyahoga No. 109039, 2020-Ohio-3675, ¶ 21, quoting *In re Lewis*, 4th Dist. Athens No. 03CA12, 2003-Ohio-5262, ¶ 16. "Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible." *Lewis* at ¶ 16; *In re K.W.*, 8th Dist. Cuyahoga No. 106700, 2018-Ohio-3314, ¶ 45.

{¶ 36} In this case, the agency developed an individualized case plan that was crafted to address Mother's historical issues and the ongoing concerns that caused I.N. to be removed from her care shortly after his birth. Once emergency custody was obtained, the agency attempted to reinitiate previous referrals that were made during Mother's pregnancy with I.N. In each instance, the agency's attempts were rebuffed by Mother, who consistently expressed her position that she did not require the recommended services and would contact service providers herself if she changed her mind — which she did not. We find it is disingenuous for Mother to suggest that the agency did not reasonably attempt to remove the obstacles preventing reunification when the record reflects that Mother failed to accept personal responsibility for her actions (or inactions) and continually rejected or otherwise ignored the agency's recommendations concerning parenting education,

a mental-health assessment, and housing. Accordingly, we are unable to conclude that the agency's case planning and efforts were unreasonable or not diligent under the circumstances of the case.

{¶ 37} Turning to the foregoing case-plan objectives, there is no dispute that Mother did not participate in parenting-education services and did not obtain a mental-health assessment despite Chisholm's consistent recommendation and encouragement. In addition, while Chisholm conceded that Mother completed the domestic-violence component of her case plan, the agency remained concerned with her ongoing relationship and interaction with her abuser. As this court has previously stated, the issue is not whether the parent has substantially complied with the case plan, but whether the parent has substantially remedied the conditions that caused the child's removal. *In re A.G.*, 8th Dist. Cuyahoga No. 105254, 2017-Ohio-6892, ¶ 39; *In re J.M.*, 8th Dist. Cuyahoga No. 104030, 2016-Ohio-7307, ¶ 49. Finally, and perhaps most evident, Mother did not resolve the agency's concerns with her ability to provide the child with safe, stable, and appropriate housing. As discussed further below, Mother is currently living with a friend. She does not have a bedroom of her own and is required to sleep on the couch. Moreover, by withholding rent payments from her former landlord, Mother was evicted from her prior home and is now ineligible for housing assistance from CMHA. In short, Mother failed to demonstrate her consistent dedication to reunification with I.N. Accordingly, we find competent and credible evidence supports the juvenile court's finding that "notwithstanding reasonable case planning and diligent efforts by the

agency to assist the parent to remedy the problems that initially caused the child[ren] to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." This finding alone was sufficient to support the court's application of R.C. 2151.414(B)(1)(a).

{¶ 38} With that stated, we note that even if this court were to assume that the juvenile court improperly relied upon R.C. 2151.414(E)(1), we "'must nevertheless affirm the judgment if it is legally correct on other grounds.'" *In re B.S.*, 4th Dist. Pike No. 18CA890, 2018-Ohio-4645, ¶ 67, quoting *Gulbrandsen v. Summit Acres, Inc.*, 2016-Ohio-1550, 63 N.E.3d 566, ¶ 41 (4th Dist.). As previously stated, only one factor designated under R.C. 2151.414(E) is needed to support the juvenile court's conclusion under R.C. 2151.414(B)(1)(a). In this case, even if this court were to disregard the court's finding under R.C. 2515.414(E)(1), we find other factors legally support the court's application of R.C. 2151.414(B)(1)(a).

{¶ 39} Here, competent, and credible evidence supports that juvenile court's findings under R.C. 2151.414(E)(4), (14), and (16). Mother's history with the agency and her issues with obtaining safe and stable housing are well documented. With respect to juvenile court's finding under R.C. 2151.414(E)(16), it is undisputed that Mother has had two other children removed from her care based on the same concerns raised in Mother's case plan for I.N. The record equally establishes that Mother did not take reasonable steps to obtain safe and stable housing for the child. At the permanent custody hearing, Chisholm explained that Mother previously

resided in a one-bedroom home that was inadequately maintained, lacked access to hot water, and had "very minimum food." (Tr. 30.) During the pendency of this custody case, Mother was evicted from her home and is currently living in a two-bedroom home with three other adults. Chisholm testified that the home was not appropriate for a young child. Mother was sleeping on the couch and did not have a crib or other provisions necessary for the care of a child under the age of one.

{¶ 40} Under these circumstances, the record reasonably supports the juvenile court's conclusion that (1) Mother demonstrated a lack of commitment to I.N. by her unwillingness to provide a safe and adequate permanent home for the child, (2) Mother is unwilling to provide food, clothing, shelter, and other basic necessities for the child, and (3) other relevant factors were applicable, including Mother's history with the agency.

{¶ 41} Because division (E) mandates that if the trial court finds, by clear and convincing evidence, that "one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent," the juvenile court properly found that I.N. could not or should not be placed with Mother within a reasonable period of time. *See, e.g., In re I.R.*, 2021-Ohio-3103, 179 N.E.3d 138, ¶ 69 (8th Dist.) (based on its findings under R.C. 2151.414(E), the juvenile court was required to find that the child could not be placed with either of his parents within a reasonable time or should not be placed with either parent), citing *In re C.H.*, 8th Dist. Cuyahoga Nos. 82258 and 82852, 2003-Ohio-6854, ¶ 58.

## 2. Second Prong: Best Interests of the Child

{¶ 42} Having determined that competent and credible evidence supports the juvenile court's finding that the child could not or should not be returned to either parent within a reasonable time, we now turn to the second prong of our analysis, which requires the court to determine, by clear and convincing evidence, whether it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

{¶ 43} "In determining the best interest of a child, a juvenile court 'may apply one of two different tests.'" *In re S.C.*, 10th Dist. Franklin No. 21AP-203, 2022-Ohio-356, ¶ 38, quoting *In re J.P.*, 10th Dist. Franklin No. 18AP-834, 2019-Ohio-1619, ¶ 39. "'Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors * * * to decide whether granting an agency permanent custody of a child is in that child's best interest.'" *Id.*, quoting *In re J.P.* at ¶ 39. "By contrast, 'under R.C. 2151.414(D)(2), if the juvenile court makes [each of] the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall" commit the child to the permanent custody of the agency.'" *Id.*, quoting *In re J.P.* at ¶ 39. "These two provisions 'are alternative means for reaching the best-interest determination.'" *Id.*, quoting *In re J.P.* at ¶ 40.

{¶ 44} In this case, the juvenile court applied R.C. 2151.414(D)(1). In determining the best interests of a child pursuant to R.C. 2151.414(D)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 45} Although a juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1), "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, the Ohio Supreme Court has clarified that R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). "Consideration is all the statute requires." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31.

{¶ 46} In the permanent custody order, the juvenile court made the following findings in support of its determination that, pursuant to R.C. 2151.414(D)(1), permanent custody was in the child's best interests:

Child has a strong bond with caregivers.

* * *

GAL recommends permanent custody. Child is too young to express his wishes.

* * *

Child has been in custody of CCDCFS since he was 2 days old.

* * *

The child deserves a safe and stable environment where his needs can be met, and he can thrive. This cannot be achieved with Mother as she has 2 other children removed from her care due to the same underlying concerns and Mother has failed to engage in any services to remedy the cause for removal, despite referrals being made. Father is unknown. No willing or appropriate relatives were identified.

The juvenile court further referenced the factors outlined under R.C. 2151.414(E)(14) and (16), reiterating that Mother has not demonstrated the willingness to provide for the child's basic needs and has had two other children removed from her care.

{¶ 47} On appeal, Mother argues the juvenile court's best-interest determination is against the manifest weight of the evidence because "like CCDCFS, the [juvenile] court prejudged this case." Mother expounded on her position, stating:

Like CCDCFS, the trial court only ever contemplated a permanent placement with CCDCFS. In its rush to judgment, the trial court, like CCDCFS, relied heavily on appellant's history with CCDCFS, made assumptions from that history, and made no efforts to avoid its repetition. It bears repeating that CCDCFS made no renewed efforts at reunification following I.N.'s birth.

{¶ 48} After careful consideration of the testimony presented at the permanent custody hearing, we find no merit to Mother's characterization of the evidence or the assertion that the juvenile court made improper assumptions without supporting evidence. To the contrary, there is competent, credible evidence in the record to support the juvenile court's reliance on the factors set forth under R.C. 2151.414(D) and its conclusion that permanent custody to the agency is in children's best interests.

{¶ 49} First, with respect to the child's relationship with his parents, siblings, relatives, and foster parents, the evidence conclusively established that I.N. does not share a relationship with his biological father or family relatives. At the time of the permanent custody hearing, the identity of the biological father was unknown despite the completion of two separate genetic tests. The record further reflects that I.N. has formed a significant bond with his foster family and his basic and medical needs are being met. The evidence in the record concerning Mother's relationship and interactions with the child is minimal. With the exception of Chisholm's brief reference to Mother's tendency to "struggle" when I.N. becomes "fussy," there is no evidence to suggest that Mother's interactions with the child are inappropriate or worrisome. Nor was there any specific testimony indicating that Mother was inconsistent with weekly visitation. Nevertheless, Chisholm and the GAL agreed that Mother's positive interactions with I.N. child, standing alone, were not indicative of her ability to provide for child's basic needs. *See In re K.M.*, 8th Dist. Cuyahoga No. 95374, 2011-Ohio-349, ¶ 23 (The best interest of the child requires

permanency and a safe, secure environment, and the mere existence of a good relationship is insufficient.).

{¶ 50} Under R.C. 2151.414(D)(1)(b), it is proper for the juvenile court to consider the GAL's recommendation where the children are too young to express their wishes. *In re M.D.*, 8th Dist. Cuyahoga Nos. 110957, 110958, and 110959, 2022-Ohio-2672, ¶ 35. Here, I.N. was approximately eight-months old at the time of the permanent-custody hearing. Although the child could not formulate a meaningful expression of his wishes at the custody hearing due to his age, the GAL spoke on the child's behalf and recommended permanent custody to CCDCFS. Noting the children's need of legally secure permanent placement, his inability to care for himself, and Mother's history of unstable housing and unwillingness to engage in recommended services, the GAL believed that permanent custody was in the child's best interests.

{¶ 51} Finally, regarding the R.C. 2151.414(D)(1)(c) and (d) factors, the record demonstrates that I.N. has been in the agency's custody since he was several days old. Since that time, Mother has been unable to resolve the issues that led to the removal of the child, including the issues related to suitable housing and Mother's ability to meet the I.N.'s basic and medical needs. As mentioned, the child's biological father is unknown and no suitable relatives were identified for placement. Thus, there is competent, credible evidence in the record supporting the juvenile court's finding that granting permanent custody to the agency is the only effective means of providing I.N. with a legally secure permanent placement.

{¶ 52} Balancing the foregoing factors and the recommendations of the GAL and agency employees, we find the juvenile court was free to conclude that the ultimate welfare of the child would be better served by an award of permanent custody. CCDCFS provided credible evidence regarding the child's custodial history, his need for legally secure placement, Mother's history with the agency, and Mother's failure to substantially remedy the conditions that caused I.N. to be removed from her care. Weighing the evidence collectively, we cannot say that the juvenile court lost its way or created a manifest miscarriage of justice in determining by clear and convincing evidence, that permanent custody was in the best interests of I.N.

{¶ 53} The first and second assignments of error are overruled.

### III. Conclusion

{¶ 54} There was competent, credible evidence by which the juvenile court could form a firm belief, under all factors under R.C. 2151.414(D)(1), that it was in I.N.'s best interest to award permanent custody to CCDCFS and that I.N. could not be placed with Mother within a reasonable time or should not be placed with Mother under R.C. 2151.414(B)(1)(a), 2151.414(E)(1), (4), (14), and (16). Accordingly, the juvenile court's judgment granting the agency's motion for permanent custody and terminating Mother's parental rights was not against the manifest weight of the evidence.

{¶ 55} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR