[Cite as *In re: T.R.-B.*, 2018-Ohio-3044.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106071**

**IN RE: T.R.-B.**
**A Minor Child**

[Appeal By V.B., Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 14911111

**BEFORE:**   Kilbane, P.J., Celebrezze, J., and Keough, J.

**RELEASED AND JOURNALIZED:**   August 2, 2018

**ATTORNEY FOR APPELLANT/MOTHER**

Judith M. Kowalski
333 Babbitt Road, Suite 323
Euclid, Ohio 44123

**ATTORNEYS FOR APPELLEES**

**FOR C.C.D.C.F.S**.

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Laura Brewster
Assistant County Prosecutor
3955 Euclid Avenue
Cleveland, Ohio 441135

Cheryl Rice
Assistant County Prosecutor
8111 Quincy Avenue, Room 440
Cleveland, Ohio 44104

**For Minor Child**

Dean Colovas
Dean A. Colovas, Atttorney at Law
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio 44103

**Guardian Ad Litem for Minor Child**

Jonathan Z. Wilbur
13940 Cedar Road, Suite 246
Cleveland Heights, Ohio 44118

**For Father**

Gregory Stralka
6509 Brecksville Road
P.O. Box 31776
Independence, Ohio 44106

MARY EILEEN KILBANE, P.J.:

{¶1} Appellant ("Mother"), appeals from the juvenile court's judgment granting permanent custody of the minor child, T.R.-B. (d.o.b. 01/07/01), to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). For the reasons set forth below, we affirm.

{¶2} In August 2014, CCDCFS filed a complaint for temporary custody of T.R.-B. and his siblings, A.B. (d.o.b. 07/03/04) and R.B. (d.o.b. 08/19/07). CCDCFS amended its complaint in October 2014. With regard to T.R.-B., the amended complaint alleges that in July 2014, Mother was arrested and charged with domestic violence and child endangering because of an incident with T.R.-B. Mother was subsequently convicted of domestic violence and child endangering. T.R.-B. was previously adjudicated dependent because of Mother's failure to ensure he attend school. The complaint further alleges that Mother was living with a relative and in need of independent, stable housing. Mother was previously diagnosed with bipolar disorder, and has recently undergone an updated assessment. Lastly, the complaint alleges that Father had established paternity, but he fails to support, visit, or communicate with T.R.-B.

{¶3} Following a hearing in March 2015, T.R.-B. and his siblings were adjudicated abused and dependent.[1] T.R.-B. and A.B. were committed to the temporary custody of CCDCFS, and R.B. was committed to the legal custody of his father. In September 2015, the court granted CCDCFS's motion for extension of temporary custody for T.R.-B. and A.B., finding that there has not been significant progress on the case plan by Mother.

---

[1]CCDCFS entered an oral motion to amend the complaint at the March 2015 hearing. The court granted the motion and marked the amended complaint as "Exhibit A."

**{¶4}** In January 2016, CCDCFS moved to modify the order of temporary custody to an order of permanent custody. The matter proceeded to trial in June 2017. At the time of trial, T.R.-B. was sixteen years old, and had been in CCDCFS's custody for more than two years. Additionally, Mother had been repeatedly incarcerated and Father was currently incarcerated.

**{¶5}** After the conclusion of trial, the juvenile court issued an order awarding permanent custody of T.R.-B. to CCDCFS.[2] The court found that T.R.-B. is abandoned, and Mother has "failed continuously and repeatedly to substantially remedy the conditions causing [T.R.-B.] to be placed outside [his] home." The court further found that

> Mother has a chronic mental illness and chemical dependency, that is so severe that it makes the parent unable to provide an adequate, permanent home for the child at the present time[.]

> Mother is repeatedly incarcerated[,] and the repeated incarceration prevents the parent from providing care for [T.R.-B.]

> Mother and [F]ather have neglected [T.R.-B.] between the date the original complaint was filed and the date of the filing of this motion by the failure to regularly visit, communicate, and/or support [T.R.-B.]

> * * *

> Mother and [F]ather are unwilling to provide food, clothing, shelter, or other necessities for [T.R.-B.]; or to prevent [T.R.-B.] from suffering emotional and/or mental neglect, as evidenced by their unwillingness to successfully complete a case plan so they can provide for the child.

Upon considering all of the required elements, the court found that a grant of permanent custody is in T.R.-B.'s best interest.

**{¶6}** It is from this order that Mother appeals, raising the following two assignments of error for review.

---

[2]A.B.'s case was concluded on a later date, with permanent custody awarded to CCDCFS. Mother has not filed an appeal in that case.

## Assignment of Error One

The trial court erred to the prejudice of [Mother] and contrary to the best interests of the child when it granted custody against the child's wishes.

## Assignment of Error Two

The trial court erred to the prejudice of [Mother] by not appointing a Guardian Ad Litem for her.

## Permanent Custody

**{¶7}** In *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 15, we stated:

> Parents have a constitutionally protected interest in "the care, custody, and management of their child[ren]." *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. But those rights are "always subject to the ultimate welfare of the child." *In re B.L.*, Franklin App. No. 04AP-1108, 2005-Ohio-1151, ¶ 7, citing *In re Cunningham* (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034.

**{¶8}** A trial court may terminate parental rights and grant permanent custody of a child to a children's services agency if the court finds, by clear and convincing evidence, that one of the conditions set forth in R.C. 2151.414(B)(1)(a)-(e) applies, and that permanent custody is in the best interest of the child. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 23-27; R.C. 2151.414(D). "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). The evidence must be more than a preponderance, but it does not rise to the level of certainty that is required beyond a reasonable doubt in criminal cases. *Cross* at 477.

**{¶9}** R.C. 2151.414(B)(1)(a)-(e) sets forth the following factors: (a) the child is not abandoned or orphaned, but the child cannot be placed with either

parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. *In re J.G.*, 8th Dist. Cuyahoga No. 100681, 2014-Ohio-2652, ¶ 41. Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re L.W.*, 8th Dist. Cuyahoga No. 104881, 2017-Ohio-657, ¶ 28. If any of the conditions outlined in R.C. 2151.414(B)(1) exists, the trial court may proceed to consider whether the grant of permanent custody to the agency is in the best interest of the child. *L.W.* at ¶ 34.

{¶10} Here, the trial court found that T.R.-B. is abandoned, which satisfies the condition under R.C. 2151.414(B)(1)(b). However, Mother does not challenge this finding. Rather, she argues the court's decision was contrary to T.R.-B.'s best interest when it granted permanent custody against his wishes.

{¶11} With regard to the best-interest analysis under R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

{¶12} In determining the best interest of a child, R.C. 2151.414(D)(1) directs the trial court to consider "all relevant factors," including, but not limited to the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster

parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem ("GAL"), with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply.

{¶13} We review a trial court's determination of a child's best interest under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47. A juvenile court does not abuse its discretion if its decision regarding the children's best interest is supported by competent, credible evidence. *In re R.T.*, 2016-Ohio-8490, 79 N.E.3d 138, ¶ 57 (8th Dist.).

{¶14} Mother argues that the grant of permanent custody to the agency was not in T.R.-B.'s best interest because he expressed the desire to live with Mother and will reach the age of majority in January 2019.

{¶15} We note that the child's wishes is only one of five enumerated factors that the court is required to consider when determining whether a grant of permanent custody is in a child's best interest. R.C. 2151.414(D)(1). While the trial court is required to consider each of the factors in making its permanent custody determination, only one of these factors needs to be resolved in favor of the award of permanent custody. *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 32, *discretionary appeal not allowed*, 124 Ohio St.3d 1446, 2010-Ohio-188, citing *In re D.W.*, 8th Dist. Cuyahoga No. 84547, 2005-Ohio-1867.

{¶16} In the instant case, a review of the record reveals that when the juvenile court considered each of the factors, it relied on the evidence in the entire record, including the GAL's

report, and ultimately concluded that a grant of permanent custody is in the best interest of the child. We find clear and convincing evidence in the record to support this decision.

{¶17} As it relates to R.C. 2151.414(D)(1)(a), the interaction and interrelationship of the child with the significant persons in the child's life, the testimony at trial demonstrated that Mother's visits with T.R.-B. were inconsistent. Although she initially visited weekly, visits lessened to every other week at Mother's request. When the location of the visits was changed, Mother was offered the opportunity for weekly visits but declined.

{¶18} At the time of trial, Mother had been incarcerated for approximately ten months because of serious criminal charges pending against her at that time, and had not visited with T.R.-B. since her incarceration. Mother was released for an intermediate period of at least seven days and she did not have contact with T.R.-B. during that time. The social worker testified that Mother displayed aggressive behaviors during the visits with her children. Based on the evidence in the record, this factor weighs in favor of permanent custody.

{¶19} As it relates to R.C. 2151.414(D)(1)(b), the wishes of the child, as expressed directly by the child or through the child's GAL, it is true that T.R.-B. expressed that he does not wish to be adopted and wants to stay with Mother. We note that at the time of the release of this opinion, T.R.-B. will reach the age of majority within six months. At the age of majority, T.R.-B. will be able to chose to spend time with his mother. Moreover, the GAL recommended that permanent custody be awarded to CCDCFS. It cannot be said that this factor necessarily weighs in favor of denying CCDCFS's request for permanent custody as alleged by Mother.

{¶20} As it relates to R.C. 2151.414(D)(1)(c), the custodial history of the child, the record demonstrates that T.R.-B. had been in CCDCFS's custody for longer than 12 of the preceding 22-month period. At the time of trial, T.R.-B. had been in the custody of CCDCFS for two years

and seven months. This factor favors permanent custody.

**{¶21}** As it relates to R.C. 2151.414(D)(1)(d), the child's need for a legally secure placement and whether that could be achieved without a grant of permanent custody, this factor also weighs in favor of permanent custody. The court found that T.R.-B. could not be placed with Mother within a reasonable period of time and should not be placed with her. At the time of the trial, Mother was incarcerated and she did not know her expected release date. Throughout the more than two and a one-half years that T.R.-B. was in CCDCFS's custody, Mother never obtained or maintained stable housing. She did not participate in family counseling sessions. Additionally, despite her reported completion of an online anger management class, Mother continued to display inappropriate and aggressive behaviors. The social worker testified Mother was the most aggressive parent that she has encountered during her ten years of employment with CCDCFS.

**{¶22}** Moreover, T.R.-B.'s father had no contact with him during the pendency of the case and did not seek to support him. T.R.-B.'s maternal grandmother was contacted to determine her interest in placement and custody, but she declined on two different occasions to cooperate with a home study to determine her appropriateness. The GAL also did not find the grandmother to be an appropriate placement or custodian.

**{¶23}** As it relates to R.C. 2151.414(D)(1)(e), none of the enumerated factors at R.C. 2151.414(E)(7) to (11) were found to apply in this case.

**{¶24}** This case is difficult given T.R.-B.'s age and his stated desire to remain with Mother. But the juvenile court is "charged with the grave responsibility of determining the children's best interest, and this is not solely limited to the children's stated wishes." *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 94, citing *In re Shaefer,* 111 Ohio

St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. "As the reviewing court, we must not disturb the juvenile court's decision if it is supported by competent, credible evidence." *Id.* Based on the foregoing testimony and evidence, the trial court determined by clear and convincing evidence that a grant of permanent custody to CCDCFS is in T.R.-B.'s best interest. We agree.

{¶25} Accordingly, the first assignment of error is overruled.

GAL

{¶26} In the second assignment of error, Mother argues that the juvenile court prejudiced her when it did not appoint her a GAL because she suffers from mental illness. In support of her argument, Mother relies on R.C. 2151.281(C) and Juv.R. 4(B)(3). R.C. 2151.281(C) provides that

> [i]n any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which *the parent appears to be mentally incompetent* or is under the age of eighteen years of age, the court shall appoint a GAL to protect the interest of that parent.

(Emphasis added.) Juv.R. 4(B)(3) provides that "[t]he court shall appoint a [GAL] to protect the interests of a child or incompetent adult in a juvenile court proceeding when * * * the parent is under eighteen years of age or *appears to be mentally incompetent*." (Emphasis added.)

{¶27} While it is uncontested that Mother has bipolar disorder and that as part of her case plan she was required to undergo a psychological evaluation, there is nothing in the record to suggest that Mother is mentally incompetent. We note that a mental impairment does not necessarily mean that the adult is mentally incompetent, requiring the appointment of a GAL. *In re T.S.*, 2009-Ohio-5496, at ¶ 20, citing *In re K.P.*, 8th Dist. Cuyahoga No. 82709, 2004-Ohio-1448.

{¶28} Moreover, Mother never objected to a lack of assistance from a guardian at any

time during the proceedings. This court has previously found that the failure to object to the lack of assistance from a GAL is waived on appeal, absent plain error. *In re T.S.* at ¶ 17, citing *In re James King-Bolen*, 9th Dist. Medina Nos. C.A. 3196-M, C.A. 3201-M, C.A. 3231-M, and C.A. 3200-M, 2001-Ohio-1412. Unless this error seriously affects the basic fairness of the judicial process, such error will not be reversed on appeal. *Id.*, citing *In re James King-Bolen.* We find no plain error in the instant case.

{¶29} Mother argues that she was prejudiced because she did not entirely grasp the risk she was taking by testifying at trial. There is no indication in the record, however, that Mother appeared mentally incompetent during the trial court proceedings. Prior to testifying at trial, the court engaged in an extensive colloquy with Mother regarding her decision to testify. The court asked Mother whether she understood that the proceedings were being recorded, that she had criminal charges currently pending against her, that the attorneys would be able to question her regarding those charges, and that the assistant prosecuting attorney handling her criminal case could get a copy of the record and that any statements she made could be used against her. The court further instructed Mother that any statements she made could be used to find her in violation of her existing probation. When Mother indicated that she understood that "to an extent," the court further instructed Mother that even if her currently pending criminal charges were later dismissed, anything she testified to could still be considered a violation of her probation. At that time, Mother stated she understood the possible ramifications of her testimony. While Mother's attorney advised her not to testify at trial, at no time did her attorney suggest that Mother did not understand the proceedings or her decision to testify.

{¶30} Finally, even if the juvenile court's failure to sua sponte appoint a GAL were considered error, Mother is required to demonstrate that she was prejudiced by that error. *In re*

*T.S.* at ¶ 21.  Here, Mother makes no argument that appointing a GAL would have changed the outcome of the trial and, therefore, has failed to demonstrate any prejudice._

**{¶31}** The second assignment of error is overruled.

**{¶32}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
KATHLEEN ANN KEOUGH, J., CONCUR