[Cite as *In re C.M.*, 2026-Ohio-2087.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE C.M., ET AL.

Minor Children

[Appeal by A.M., Mother]

:
:
:
:
:
:

No. 115711

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 4, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD23902931 and AD23902932

---

***Appearances:***

Law Office of Victor O. Chukwudelunzu, LLC, and Victor Chukwudelunzu, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

---

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant A.M. ("Mother") appeals judgment entries of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that awarded permanent custody of her children C.M. and H.B. ("the children") to the Cuyahoga

County Division of Children and Family Services ("CCDCFS" or "the agency").[1] She claims the following errors:

> 1. The trial court violated Mother's due process rights (a) [b]y denying Mother's first request for a continuance and proceeding with a permanent[-]custody trial in her absence, (2) [b]y entering a same-day permanent[-]custody judgment without demonstrating independent judicial review after a magistrate-conducted hearing, and (3) [f]ailing to appoint a Guardian ad Litem for her, despite record evidence raising concerns regarding her mental health, comprehension, and ability to meaningfully participate in the proceedings, thus depriving Mother of a fair hearing.

> 2. The trial court [erred in] finding that permanent custody was supported by clear and convincing evidence was against the manifest weight of the evidence.

{¶ 2} For the reasons that follow, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} On March 9, 2023, CCDCFS filed a complaint alleging the children were neglected and requesting temporary custody of the children. Following a same-day hearing, the court committed the children to agency custody. The children were later adjudicated dependent and placed in temporary custody of CCDCFS. Temporary custody of CCDCFS was extended twice as permitted by Ohio law. However, on January 30, 2025, CCDCFS filed a motion to modify temporary custody to permanent custody.

{¶ 4} The juvenile court conducted a trial on the motion for permanent custody on September 22, 2025. Mother's trial counsel orally requested a

---

[1] The children's father ("Father") did not actively pursue custody of the children, and he is not a party to this appeal. We, therefore, only address Mother's appeal in this opinion.

continuance on the morning of trial. Counsel advised the court that Mother could not attend the trial due to a conflict. (Tr. 5-6.)[2] Counsel for CCDCFS objected to the continuance and reminded the court that Mother failed to appear for four of the last five hearings, all of which were within the last year. Counsel further argued that a continuance would cause inconvenience to the parties, witnesses, and the court and that Mother also failed to attend visits with the children. (Tr. 7-8.) After hearing from both sides, the court denied the motion for continuance and proceeded with the trial in Mother's absence.

{¶ 5} At the time of trial, C.M. was four years old and H.B. was six years old. Richard Grace, Jr. ("Grace"), a social worker and child-protection specialist with CCDCFS, testified that the children were initially removed from Mother's care because the conditions of her home were "deplorable." (Tr. 14.) He explained that there were "layers of garbage" and "vomit" on the floors, the home was "roach infested," and the children were playing with maggots. (Tr. 14.) When authorities responded to the home to remove the children, Mother was not dressed.

{¶ 6} The agency was also concerned with Mother's mental health and that "she didn't appear to grasp the concerns regarding the conditions of the home. And when Mother was directed to get dressed, she only partially dressed." (Tr. 15.)

{¶ 7} The agency created a case plan for Mother with the goal of reunification with her children. The case-plan objectives included services to address Mother's

---

[2] All citations to the transcript refer to the transcript of the trial conducted on September 22, 2025.

mental health, substance abuse, housing, and Mother's ability to provide for the basic needs of her children. (Tr. 18.) Mother was referred to East Cleveland Collaborative, and later to Heights Collaborative, to help her create a safe, clean, and sanitary living environment for herself and her children. (Tr. 18.)

{¶ 8} Mother initially improved the conditions of her home, and the agency was preparing to allow her overnight visits with the children, but when Grace went to inspect the home in August 2024, he found that the home had returned to the condition it was in when the children were removed. (Tr. 19.) Consequently, no overnight visits were scheduled, and from that point on, Mother no longer allowed Grace into the home. (Tr. 20.) As a result, Grace was unable to speak to the appropriateness of Mother's home for the children at trial. (Tr. 20.)

{¶ 9} According to Grace, Mother never established proof of any income despite repeated requests for pay stubs or other proof. Therefore, Grace did not know if she was capable of meeting the children's basic needs and he was left with "concerns." (Tr. 21.)

{¶ 10} Mother had a longstanding history of depression, and her case plan required her to engage in mental-health services. The agency referred Mother to Signature Health where Mother worked with a therapist who reported that Mother was fairly consistent with her treatment. However, Signature Health later discharged her in September 2024 for lack of consistency and engagement. (Tr. 24.) Grace tried to engage her with Heights Collaborative, but Mother did not follow up with those services for a period of several months. (Tr. 24.) She eventually reported

that she completed a new intake with Signature Health, and Grace verified that the therapist she reported working with was employed there, but he was unable to obtain any confirmation that she was actively engaged in services or what her treatment plan was. (Tr. 25.)

{¶ 11} At the time of trial, Mother had had six agency referrals for parenting due to neglect, including the neglect of an older daughter who was an adult at the time of trial. (Tr. 26.) Mother completed a parenting program at Beech Brook, but she was inconsistent with child visitation. The agency also "had issues with her sleeping during visits." (Tr. 27.)

{¶ 12} Grace testified that the children's maternal grandmother reported to the agency that Mother had a long history of polysubstance drug use, including crack cocaine. (Tr. 32.) Father also reported that Mother used drugs. (Tr. 33.) Grace referred Mother to Moore Counseling and Recovery Resources for drug treatment, but she failed to engage in any of these services. (Tr. 33-34.)

{¶ 13} During the pendency of this case, Father lived in Haiti and eventually moved to Skokie, Illinois. After he moved to the United States, the agency made efforts to establish visitation with him, and he visited them in-person on two occasions. However, Father, who does not speak English, was reportedly overwhelmed with the visitation process. (Tr. 37.) The agency ultimately determined that Father could not care for the children. (Tr. 40-44.) Although Father was aware of the trial on CCDCFS's motion for permanent custody, he sent a

text message to his lawyer informing him that he was not going to come to the trial. (Tr. 10.)

{¶ 14} The agency attempted to identify an appropriate relative caregiver for the children but was not successful, and the children were placed in foster care. Grace testified that the foster family was meeting the children's needs and that the family was willing to adopt the children. Upon questioning, Grace offered his opinion that permanent custody was in the children's best interest.

{¶ 15} At the conclusion of the trial, the guardian ad litem ("GAL") also stated that she believed permanent custody was in the children's best interest. The GAL also advised the court that the children had indicated to both the foster-care provider and the agency that "they would like to stay" with the foster family. (Tr. 57.)

{¶ 16} Following closing arguments, the trial court announced its ruling from the bench and placed the children in the permanent custody of CCDCFS. The court also issued judgment entries placing the children in permanent custody. Mother now appeals the trial court's judgments.

## II. Law and Analysis

### A. Due Process

{¶ 17} In the first assignment of error, Mother argues the trial court violated her right to due process by (1) denying her request for a continuance, (2) entering judgment the same day as trial without demonstrating independent judicial review after a magistrate-conducted hearing, and (3) failing to appoint a guardian ad litem for her even though she demonstrated mental-health and comprehension issues.

## 1. Continuance

{¶ 18} Mother argues the trial court abused its discretion when it denied her first request for a continuance and proceeded to trial in her absence. She contends that given the irreversible consequences of permanent custody and the "heightened constitutional protections required in such proceedings," the court should have granted her a continuance.

{¶ 19} The decision to grant or deny a motion for a continuance rests in the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65 (1981). A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 20} The right to parent one's children is a fundamental right protected by the Due Process Clause of the United States and Ohio Constitutions. *In re M.W.*, 2016-Ohio-2948, ¶ 9 (8th Dist.). A fundamental requirement of due process includes an opportunity to be heard. *Id.* However, a parent's right to be present at a permanent-custody hearing is not absolute. *Id.* at ¶ 11.

{¶ 21} Although courts must ensure that due process is provided in parental-termination proceedings, "a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *In re Q.G.*, 2007-Ohio-1312, ¶ 12 (8th Dist.). Any potential prejudice to a party denied a continuance is weighed against a trial court's "right to control its

own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67.

{¶ 22} In *Unger*, the Ohio Supreme Court observed that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger,* 67 Ohio St.2d at 67 (1981). The *Unger* Court identified certain factors a court should consider in evaluating a motion for a continuance. These factors include

> the length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id*. at 67-68.

{¶ 23} Mother's trial counsel made an oral motion for a continuance on the day of the trial. She informed the court that Mother had a "conflict," but she did not explain the nature of the "conflict." She, therefore, failed to provide a legitimate reason for the requested continuance.

{¶ 24} The record shows that many people appeared for trial, including attorneys, the agency worker, and the GAL. Selecting a new trial date with several professionals is often difficult and would be an inconvenience to everyone involved, including the court.

{¶ 25} Moreover, at the time of trial on September 22, 2025, the children had been in agency custody since March 2023 and the motion for permanent custody had been pending since January 30, 2025. The motion for permanent custody had been pending nearly eight months. R.C. 2151.414(A)(2) requires that a juvenile court hold a hearing on a public children services agency's motion for permanent custody no later than 120 days after the agency files a motion for permanent custody, though a reasonable continuance may be granted "for good cause shown." But good cause was not shown. Therefore, the court acted within its discretion when it denied the motion for continuance.

## 2. Independent Review

{¶ 26} Mother next contends the trial court violated her due-process rights by entering a same-day judgment without demonstrating independent judicial review after a magistrate-conducted hearing. Mother asserts although "[t]he transcript reflects that the permanent custody trial was conducted by Magistrate Mollie A. Murphy," the permanent-custody judgment was issued and signed by the judge the same day as the hearing. However, the magistrate's name was included on the transcript in error and the error was subsequently corrected to reflect the fact that the assigned judge rather than a magistrate presided over the trial. Therefore, the assigned judge properly heard the evidence and argument of counsel and ruled accordingly. There was no due process violation.

### 3. GAL for Mother

{¶ 27} Mother nevertheless argues the trial court violated her due-process rights because it should have appointed her a GAL to ensure that she understood the court proceedings and to assist her in defending her parental rights.

{¶ 28} R.C. 2151.281(C) governs the appointment of a GAL for a parent and provides:

> In any proceeding concerning an alleged or adjudicated delinquent, unruly, abused, neglected, or dependent child in which the parent appears to be mentally incompetent or is under eighteen years of age, the court shall appoint a guardian ad litem to protect the interest of that parent.

{¶ 29} Juv.R. 4(B) similarly provides that "[t]he court shall appoint a [GAL] to protect the interests of a child or incompetent adult in a juvenile court proceeding when . . . the parent is under eighteen years of age or appears to be mentally incompetent."

{¶ 30} Mother never requested an appointment of a GAL to represent her nor did her counsel object to a lack of assistance from a guardian at any time during the proceedings. Mother has, therefore, forfeited all but plain error. *In re T.S.*, 2009-Ohio-5496, ¶ 17 (8th Dist.) (holding that failure to object to a lack of assistance from a GAL constitutes plain error). "Plain error exists only when it can be determined that the outcome of the trial would have been different." *In re A.M.*, 2024-Ohio-1164, ¶ 47 (8th Dist.), quoting *In re S.F.*, 2023-Ohio-1900, ¶ 15 (8th Dist.), citing *In re Z.T.*, 2007-Ohio-827, ¶ 19 (8th Dist.).

{¶ 31} Mother's trial counsel never indicated that Mother needed a GAL and there is nothing in the record to support a finding that Mother was mentally incompetent. Just because she has been diagnosed with depression does not mean she is mentally incompetent. Having a mental illness does not equate to mental incompetence. *In re T.R.-B.*, 2018-Ohio-3044, ¶ 26 (8th Dist.) (holding that just because mother had bipolar disorder did not mean she was mentally incompetent).

{¶ 32} Moreover, when Grace was asked about Mother's understanding of the proceedings, he testified that she did not appear to have "any cognitive delays, any inability to truly understand what's happening." (Tr. 51.) Indeed, Grace stated that he had no question that Mother was able to understand "from a competency standpoint." (Tr. 51.) Therefore, the trial court had no reason to appoint a GAL for mother.

{¶ 33} The first assignment of error is overruled.

### B. Permanent Custody

{¶ 34} In the second assignment of error, Mother argues the trial court's judgment finding all the requirements for permanent custody were met is against the manifest weight of the evidence.

{¶ 35} A parent has a fundamental interest in the care and custody of their child. *In re L.W.*, 2019-Ohio-1343, ¶ 20 (8th Dist.). However, "'[t]he natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 36} When deciding to terminate an individual's parental rights, the goal "'is to make a more stable life for the dependent children and to facilitate adoption to foster permanency for children.'" *In re U.B.*, 2025-Ohio-1265, ¶ 22 (8th Dist.), quoting *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.). The primary focus of any child-custody decision is the best interest of the child. *Venable v. Venable*, 3 Ohio App.3d 421, 423 (8th Dist. 1981).

{¶ 37} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.,* 2018-Ohio-2523, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). The first prong of this statute authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e).

{¶ 38} In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then analyze whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 39} In *In re Z.C.,* the Supreme Court of Ohio clarified the standard of review in permanent-custody cases and held that

> [g]iven that R.C. 2151.414 requires that a juvenile court find by clear and convincing evidence that the statutory requirements are met . . . the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties.

*Id*. at ¶ 11.

{¶ 40} With respect to the manifest weight of the evidence, the Court stated:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.]. "In weighing the evidence, the court

of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

### 1. First Prong — R.C. 2151.414(B)

{¶ 41} The juvenile court made a finding, pursuant to R.C. 2151.414(B)(1)(d), that the children had been in agency custody "for twelve or more months of a consecutive twenty-two month period." This finding is supported by the record, which shows that the complaint was filed on March 9, 2023, when the children were removed from Mother's home. Grace testified at trial that the children had been in uninterrupted agency custody from that time until the day of trial on September 22, 2025, a period of two and a half years. Therefore, the "12 of 22 months" finding satisfied the first prong of the permanent-custody analysis.

### 2. Second Prong – Best Interest of the Child

{¶ 42} Having determined that competent and credible evidence supports the juvenile court's finding that the children were in agency custody for more than "12 of 22 months," we now turn to the second prong of our analysis, which requires the court to determine, by clear and convincing evidence, whether it is in the best

interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

{¶ 43} A juvenile court may apply one of two different tests to determine the best interest of the child. *In re I.N.*, 2024-Ohio-950, ¶ 43 (8th Dist.). "'Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors . . . to decide whether granting an agency permanent custody of a child is in that child's best interest.'" *In re S.C.*, 2022-Ohio-356, ¶ 38 (10th Dist.), quoting *In re J.P.*, 2019-Ohio-1619, ¶ 39 (10th Dist.). "By contrast, 'under R.C. 2151.414(D)(2), if the juvenile court makes [each of] the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall" commit the child to the permanent custody of the agency.'" *Id.*, quoting *In re J.P.* at ¶ 39. "These two provisions 'are alternative means for reaching the best-interest determination.'" *Id.*, quoting *In re J.P.* at ¶ 40.

{¶ 44} In this case, the juvenile court applied both R.C. 2151.414(D)(1) and 2151.414(D)(2). Although a juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1), "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Moreover, the Ohio Supreme Court has clarified that R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). "Consideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31.

{¶ 45} In determining the best interest of a child pursuant to R.C. 2151.414(D)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . .;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 46} The trial court's journal entry plainly states that it considered the interaction and interrelationship between mother and the children, as well as the wishes of the children, as expressed through the GAL. The GAL expressed the children's desire to remain with the foster family. The court further noted that the children had been in agency custody for well over two years and that the children need a safe and stable home environment. These statements in the journal entry satisfy R.C.2151.414(D)(1), and the record supports these findings.

{¶ 47} Even though it was not required to do so, the trial court set forth an additional basis for granting permanent custody under R.C. 2151.414(D)(2). Pursuant to R.C. 2151.414(D)(2), permanent custody is in the best interest of the child and the court is required to commit the child to the permanent custody of a public children services agency when all of the following apply:

> (a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

> (b) The child has been in an agency's custody for two years or longer and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

> (c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

> (d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶ 48} The trial court found, pursuant to R.C. 2151.414(D)(2) and 2151.414(E), that the children could not be placed with either parent within a reasonable time; the children had been in agency custody for over two years and they no longer qualify for temporary custody; the children do not meet the requirements of a planned permanent living arrangement; and no other relatives or interested persons have been identified for legal custody. These findings are also supported by the record.

{¶ 49} Finally, the court found that the factors listed in R.C. 2151.414(E)(1), (4), (14) and (16) were met. Those provisions state:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the court considers relevant.

{¶ 50} The juvenile court found that despite reasonable efforts by the agency to assist the parents in remedying the conditions that caused the children to be removed, the parents continuously and repeatedly failed to remedy those conditions. The court also found that Mother demonstrated a lack of commitment toward her children because she repeatedly failed to visit them and failed to demonstrate a willingness to earn an income to provide food, clothing, shelter and other basic necessities for the children. Regarding R.C. 2151.414(E)(16), the court found that neither parent was present for trial and that they both had a history of not appearing for court hearings. These findings are all supported by the record.

{¶ 51} Therefore, the second prong of the permanent-custody analysis was satisfied and the trial court's findings are not against the manifest weight of the evidence. Accordingly, the second assignment of error is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, JUDGE

LISA B. FORBES, P.J., and
DEENA R. CALABRESE, J., CONCUR